A96A2248. MORRIS v. CSX TRANSPORTATION, INC.
(481 SE2d 585)

Judge Harold R. Banke.

Carl Randy Morris, a rail car inspector, appeals the jury verdict for his employer, CSX Transportation, Inc. ("CSX"), in this action brought under the Federal Employers' Liability Act, ("FELA"), 45 USC § 51 et seq. Morris enumerates five errors.

This case arose after Morris allegedly injured his back while replacing a brake shoe on a rail car parked in CSX's Augusta yard.[1] Morris maintains that the brake shoe was difficult to replace because corresponding brakes, larger than the car's specifications permitted, left too little slack and CSX knew of the error. The complaint alleges

---

[1] Morris was responsible for building, maintaining, and dismantling freight cars.

that CSX (1) negligently failed to provide Morris with a reasonably safe place to work and (2) violated the Safety Appliance Act, 45 USC § 1 et seq., by using a defective brake on its rail car. Morris sought over one million dollars in damages. *Held*:

1. The trial court properly rejected Morris' motion for new trial because the evidence did not demand a finding that CSX's alleged negligence "played a part, however small, in the injuries that he sustained." *Neal v. CSX Transp.*, 213 Ga. App. 707, 709 (2) (445 SE2d 766) (1994). In fact, under the evidence presented the jury legitimately could have found that a brake shoe did not cause Morris' alleged injury. When Morris reported the injury a week after it purportedly happened, he was unable to positively identify the car on which it allegedly occurred. He identified the car only after his attorney received information about the over-sized brake shoe years later during discovery. The record shows that a brake shoe one-half inch too large may have been on one of the brakes on the car on which Morris was working when his alleged injury occurred. But each car had eight brake shoes and Morris failed to establish that he worked on a particular brake that could have been affected by the over-sized brake shoe, a failure of proof created by not timely reporting the alleged injury. Morris admitted that he had not observed that any of the brake shoes were the wrong size.

In addition, Morris' failure to timely report the incident and evidence that he had not sustained injuries of the extent and severity claimed undermined his credibility. At trial, the evidence revealed that Morris worked a week following the injury before reporting it to his supervisor or co-workers. The day after the injury, Morris replaced over 20 brake shoes. When he reported the injury, he stated it was no one's fault. He was subsequently cited for failing to make an immediate oral and written report to his supervisor following the injury and taking unnecessary chances in the performance of his duties.

In addition, notwithstanding his claim of devastating pain, Morris admitted that he kept a garden, performed yard work for an elderly neighbor, kept up his four vehicles, and helped his daughter move. Morris' next door neighbors testified that he had been "very active" around the house during the previous three years, tilling, weeding, mowing, digging, removing and constructing fences, using a chain saw, and working on cars and the roof. In addition, CSX presented a videotape of Morris performing such yard work as weeding and cranking a mower. Morris admitted that he filed a personal injury action following an automobile accident approximately two months after the injury at issue claiming permanently disabling injuries including back pain. Because some evidence, viewed in the light most favorable to the prevailing party, supports the verdict, the trial

court did not abuse its discretion in denying the motion for new trial. Id.; *Estfan v. Poole*, 193 Ga. App. 507, 509-510 (1) (d) (388 SE2d 373) (1989).

2. We must affirm the trial court's decision to direct a verdict on the strict liability claim under the Safety Appliance Act because Morris failed to satisfy his burden of presenting evidence that the train was "in use" within the meaning of that statute when the alleged injury occurred.[2] See *CSX Transp. v. McCord*, 202 Ga. App. 365, 366 (2) (414 SE2d 508) (1991) (plaintiff bears the burden of proving Safety Appliance Act was triggered); *Pinkham v. Maine Central R. Co.*, 874 F2d 875, 881 (6) (1st Cir. 1989) ("in use" issue is a question of law); OCGA § 9-11-50 (a) (absence of conflicting evidence on material issue).

In construing the statutory language, "Congressional intent and the case law . . . clearly exclude those injuries directly resulting from the inspection, repair, or servicing of railroad equipment located at a maintenance facility." *Angell v. Chesapeake & O. R. Co.*, 618 F2d 260, 262 (4th Cir. 1980). Further, "[g]enerally, courts have not applied the Act to trains involved in switching operations — those procedures by which the cars and engines are uncoupled, moved, and reassembled — even though the trains are in motion." *Trinidad v. Southern Pacific Transp. Co.*, 949 F2d 187, 188 (2) (5th Cir. 1991); accord *Maynard v. Norfolk & Western R.*, No. 94-1285 (4th Cir. 1995), cert. denied, __ U. S. __ (116 SC 85, 133 LE2d 42) (1995); compare *Brady v. Terminal R. Assn.*, 303 U. S. 10 (58 SC 426, 82 LE 614) (1938) (injury occurred while the train was en route); *Angell*, 618 F2d at 260 (engine which caused the injury had already passed inspection). The cases make clear that the determination of whether a rail car is "in use" is fact driven. See Annot., "When Railroad's Equipment is Being . . . 'Used' . . . so as to Bring Injury or Death of Workman within Purview of Federal Safety Appliance Act (45 USC §§ 1 et seq.)," 96 ALR2d 419, 421, § 2.

In the instant case, the record shows that the alleged injury may have occurred while Morris was conducting a predeparture inspection of the outbound train at issue. At the time, the train was "blue flagged" on a track next to the main line, meaning the switches on each end of the track were locked closed so that the train remained stationary while it was inspected and other trains stayed off the

---

[2] Despite recent changes in the statutory language, the parties do not dispute that a rail car must be "in use" for the Safety Appliance Act to apply. See *Atlantic Coastline R. Co. v. Edge*, 81 Ga. App. 606, 608 (1) (59 SE2d 533) (1950). The brake provisions of the Safety Appliance Act presently state in pertinent part "a railroad carrier may use or allow to be used on any of its railroad lines . . . a vehicle only if it is equipped with . . . secure sill steps and efficient hand brakes. . . ." 49 USC § 20302 (a) (1) (B).

track. These undisputed facts, with all reasonable deductions therefrom, fail to generate the requisite conflict in the evidence needed to preclude a directed verdict on whether the train was "in use." OCGA § 9-11-50 (a); *Trinidad*, 949 F2d at 188.

Morris bore the burden of proof on this issue. *McCord*, 202 Ga. App. at 366; see *Edge*, 81 Ga. App. at 608-609. However, he designated that much of the trial record be omitted from the record on appeal. OCGA § 5-6-37. He presented no evidence showing whether the train had been withdrawn from service after it arrived at the yard, disassembled on its arrival, or released for travel. Nor does the record reflect the length of time it had been at the yard or what kind of maintenance it underwent during its stay. In the absence of any conflicting evidence on the "in use" issue, the trial court's decision to direct the verdict on the Safety Appliance Act claim must be affirmed.

3. In light of our ruling in Division 2, it follows that the trial court did not err in refusing to instruct the jury on the Safety Appliance Act.

4. The trial court properly rejected Morris' contention that a violation of the Interchange Rules of the American Association of Railroads ("AAR") constituted a violation of the Safety Appliance Act. Morris claimed CSX violated AAR Rule 12, which purportedly provides that only one and one-half inch brake shoes may be applied to cars stenciled for such shoes, arguing that Federal Railroad Administration ("FRA") regulations incorporated the rule. Inasmuch as Morris provided no authority requiring this conclusion, we decline to impose the strict liability required under the Safety Appliance Act. We likewise reject Morris' contention that strict liability should be imposed despite the Act's failure to directly incorporate the AAR Rules. Notwithstanding Morris' argument to the contrary, *Central of Ga. R. Co. v. Lightsey*, 198 Ga. App. 59 (400 SE2d 652) (1990) did not adopt the view that where no FRA regulations cover a particular safety issue, regulations enacted by other entities apply to railroads. *Lightsey* never reached that issue, holding instead that FRA regulations preempted the Occupational Safety & Health Administration's authority to regulate the conditions at issue. Id. at 62 (2) (a). In the absence of authority requiring the imposition of strict liability for violations of the AAR Rules, the trial court did not err in granting CSX's motion for partial directed verdict.

5. Because the violations of the AAR Rules do not subject CSX to strict liability, the trial court properly refused to instruct the jury to the contrary.

*Judgment affirmed. McMurray, P. J., and Johnson, J., concur.*

Decided February 12, 1997 —

*Warshauer & Woodruff, Michael J. Warshauer,* for appellant.
*Fulcher, Hagler, Reed, Hanks & Harper, James W. Purcell, David P. Dekle,* for appellee.