A06A0150. GOSS v. ALABAMA GREAT SOUTHERN RAILROAD.
(632 SE2d 479)

MILLER, Judge.

Clyde Goss was injured during the course of his employment with Alabama Great Southern Railroad ("AGSR") when a ladder rung broke while he was climbing the side ladder of a rail car. Pursuant to the Federal Employers' Liability Act, 45 USC § 51 et seq. ("FELA"), Goss sued AGSR in the Superior Court of Bibb County, claiming that he was injured as a result of AGSR's negligence and its violation of the Safety Appliance Act, 49 USC § 20302 ("SAA"). Goss and AGSR filed cross-motions for partial summary judgment on the issue of liability on Goss's SAA claim. The trial court denied Goss's motion, and granted summary judgment in favor of AGSR. Goss appeals from that order. For the reasons set forth below, we reverse.

---

[11] Id. at 393-394 (1).

[12] Id.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citations omitted.) *Hall v. Norfolk Southern R. Co.*, 258 Ga. App. 712, 712-713 (574 SE2d 902) (2002).

The undisputed evidence shows that Goss worked as a conductor at AGSR's Meridian, Mississippi rail yard. In April 2002, Goss was tasked with moving a "cut" of ten loaded hopper cars that had arrived the previous night on an inbound train. Goss moved the cars to an interchange track and "tied" the cars down on that track by setting the handbrakes on each car. Although the cars were temporarily placed on the interchange track, they were scheduled to be hauled down another track and delivered to a contractor in Meridian after being inspected at the yard.

Goss and his engineer used an engine to move the rail cars to the interchange track. Once the movement was completed, Goss climbed the side ladder of one of the cars to set its handbrake. As he did so, one of the ladder's rungs (also termed a "grab iron"[1]) broke. Goss was injured when he fell.

Goss claims that AGSR violated the SAA since the rail car on which he was injured lacked a secure ladder, causing his injuries and entitling him to partial summary judgment on the issue of liability. AGSR contends that it is entitled to partial summary judgment as to Goss's claim since the rail car was not "in use" when he was injured. For the reasons that follow, we agree with Goss and disagree with AGSR.

The SAA provides in pertinent part:

(a) . . . a railroad carrier may use or allow to be used on any of its railroad lines —

(1) a vehicle only if it is equipped with — . . . (C) secure ladders and running boards when required by the Secretary of Transportation, and, if ladders are required, secure handholds or grab irons on its roof at the top of each ladder;

(2) except as otherwise ordered by the Secretary, a vehicle only if it is equipped with secure grab irons or

---

[1] Ladder steps or rungs are sometimes referred to as "grab irons." See, e.g., *Rose v. Atlantic Coast Line R. Co.*, 277 FSupp. 913, 916 (3) (D. S.C. 1967).

handholds on its ends and sides for greater security to individuals in coupling and uncoupling vehicles.

49 USC § 20302 (a) (1), (2).

Railroads are held strictly liable for SAA violations, and employees injured as a result of such violations may sue under the FELA. See *Lisek v. Norfolk and Western R. Co.*, 30 F3d 823, 825-826 (II) (A) (7th Cir. 1994); *Trinidad v. Southern Pacific Transp. Co.*, 949 F2d 187, 188 (5th Cir. 1991). The plaintiff bears the burden of showing that the SAA applies to his or her case. See *CSX Transp. v. McCord*, 202 Ga. App. 365, 366 (2) (414 SE2d 508) (1991). In particular, a rail car must be "in use" for the SAA to apply. See *Morris v. CSX Transp.*, 224 Ga. App. 598, 600 (2), n. 2 (481 SE2d 585) (1997). This determination is a question of law for the court, and is fact driven. Id. at 600 (2).

"[T]he intent of the statute is to exclude from its coverage only such functions as are necessary to detect and correct those defective conditions for which absolute liability will be imposed." *Angell v. Chesapeake and O. R. Co.*, 618 F2d 260, 262 (4th Cir. 1980). Accordingly, the SAA "exclude[s] those injuries directly resulting from the inspection, repair, or servicing of railroad equipment located at a maintenance facility." (Citation and punctuation omitted.) *Morris*, supra, 224 Ga. App. at 600 (2). Inasmuch as Goss's injuries do not arise from the inspection, repair, or servicing of the rail car at a maintenance facility, his claims under the SAA are not excluded for that reason.

The United States Supreme Court has held that the provisions of the SAA involving automatic couplers and grab irons "embrace switching operations as well as train movements, for both involve a hauling or using of cars." *United States v. Erie R. Co.*, 237 U. S. 402, 408 (35 SC 621, 59 LE 1019) (1915). It follows that Goss's SAA claims may not be excluded on the ground that he was injured while the rail car was involved in a switching operation. Accord *Williams v. Norfolk Southern R. Co.*, 126 FSupp.2d 986, 991-992 (II) (C) (W.D. Va. 2000) (finding no sound rationale for excluding application of SAA to plaintiff's claim on grounds that he was injured in a switching operation).

At issue here was whether the car was in use for purposes of the SAA. In this regard, the case is controlled by the United States Supreme Court's decision in *Brady v. Terminal R. Assn.*, 303 U. S. 10 (58 SC 426, 82 LE 614) (1938). In *Brady*, the high Court held that,

[t]he "use, movement or hauling of the defective car," within the meaning of the statute, had not ended when petitioner sustained his injuries. The car had been brought into the

yard at Granite City and placed on a receiving track temporarily pending the continuance of transportation. If not found to be defective, it would proceed to destination; if found defective, it would be subject to removal for repairs. It is not a case where a defective car has reached a place of repair. The car in this instance had not been withdrawn from use. The car was still in use, though motionless. In view of that use, either the Terminal [Railroad] Association or the Wabash [Railway Company] was subject to the obligation imposed by the statute.

(Citations omitted.) Id. at 13. In this case, the rail car on which Goss was injured was loaded and was scheduled to be delivered to the customer. As in *Brady*, the rail car here, though stopped, had been temporarily moved to another track in the railroad's yard pending the continuance of transportation. Thus, the rail car remained "in use" for purposes of the SAA at the time of Goss's injury. Id.; see also *Great Northern R. Co. v. Otos*, 239 U. S. 349, 351 (36 SC 124, 60 LE 322) (1915) (car in switching operation that was loaded, delivered the following day, and "merely subjected to a delay in carrying it to its destination" was subject to the SAA).

It follows that we must reverse the trial court's grant of partial summary judgment to AGSR. Since the undisputed evidence shows that Goss was injured as a result of a break in a ladder step or grab iron, the trial court also erred in denying Goss's motion for partial summary judgment as to AGSR's liability for his claim under the SAA violation claim, as a violation of the statute subjects AGSR to strict liability. See 49 USC § 20302 (a) (1), (2); *Phillips v. Chesapeake &c. R. Co.*, 475 F2d 22, 25 (II) (4th Cir. 1973) ("the mere failure of a safety device to operate properly at the time the employee is injured is sufficient to show that it is defective").

*Judgment reversed. Johnson, P. J., and Ellington, J., concur.*

DECIDED JUNE 12, 2006 — 

*Warshauer, Thomas, Thornton & Rogers, Michael J. Warshauer, Lyle G. Warshauer, Bradford W. Thomas*, for appellant.

*Hall, Bloch, Garland & Meyer, F. Kennedy Hall, John E. Hall IV, Mark E. Toth*, for appellee.

*Wettermark, Holland, Keith & Barber, James H. Wettermark*, amicus curiae.